171 N.J. Super. 23 (1979)
407 A.2d 1248
KATHRYN BARTELS, AN INFANT BY HER GUARDIAN AD LITEM DONALD J. BARTELS, MICHAEL BARTELS, AN INFANT BY HIS GUARDIAN AD LITEM DONALD J. BARTELS, DONALD J. BARTELS AND MAUREEN BARTELS, INDIVIDUALLY, PLAINTIFFS,
v.
CHARLES ROMANO AND SUE ANN ROMANO, DEFENDANTS AND THIRD-PARTY PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, THIRD-PARTY DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1979.
Decided October 26, 1979.
*25 Before Judges SEIDMAN, MICHELS and DEVINE.
Mr. George W. Connell argued the cause for appellant (Messrs. Connell, Foley & Geiser, attorneys; Mr. Richard D. Catenacci, of counsel and on the brief).
Mr. Robert A. Sachs argued the cause for respondents (Messrs. Sachs & Sachs, attorneys).
The opinion of the court was delivered by DEVINE, J.A.D.
By leave granted, third-party defendant, New Jersey Manufacturers Insurance Company (NJM) appeals from a summary judgment of the trial court ruling that it provide coverage, under a homeowner's policy, to defendants Charles and Sue Ann Romano in a pending negligence action.
It appears that the vehicle was parked in defendants' driveway and the Romano children were occupying it while awaiting their mother. In some manner the car was caused to roll backward. It struck the infant plaintiffs Kathryn and Michael Bartels, who were playing in the driveway, causing personal injuries.
At the time of the accident the Romanos were insured by Travelers Insurance Company (Travelers) under an automobile *26 liability policy with limits of $100,000, and by NJM under a homeowner's policy with limits of $25,000.
The injured minors and their parents filed suit against the Romanos. The complaint, as amended, was couched in five counts. The first and second counts charged defendants with negligent maintenance, operation and control of their motor vehicle; the third and fifth counts charged that defendants "so carelessly and negligently supervised or failed to supervise their infant children and other children under their care, custody and control so as to permit such children to occupy and operate the motor vehicle which occupation of said motor vehicle caused said vehicle to collide with infant plaintiff. ..." (Emphasis supplied.)
Through counsel assigned to the defense of the suit by Travelers, defendants filed a third-party complaint against NJM seeking an adjudication that the allegations of the amended complaint fell within the coverage provided by the homeowner's policy. On cross-motions for summary judgment the trial judge held that NJM was to provide exclusive coverage for the allegations set forth in the third and fifth counts; Travelers was to provide exclusive coverage for the allegations of the first and second counts, and coverage of the fourth count, seeking a per quod recovery only, was to abide the trial. We disagree with that portion of the judgment referable to the third and fifth counts and reverse.
The automobile policy obligated Travelers to pay damages for injury "arising out of the ownership, maintenance or use of the owned automobile."
The allegations of the third and fifth counts clearly implicate the "ownership, maintenance or use" provisions of Travelers policy. The NJM policy contains an exclusion:
This policy does not apply:
a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
........
(2) any motor vehicle owned or operated by ... any insured....
*27 In our opinion the case is controlled by the rationale of Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29 (App.Div. 1973), aff'd o.b. 65 N.J. 152. In that case an injury occurred when a passenger threw a stick out of the back window of the car. As in this case, the court was confronted with a coverage conflict involving automobile and homeowner's policies. Initially, the court posed the inquiry whether the injury sustained arose out of the use of the automobile, and responded:
We consider that the phrase "arising out of" must be interpreted in a broad and comprehensive sense to mean "originating from" or "growing out of" the use of the automobile. So interpreted, there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise. The inquiry should be whether the negligent act which caused the injury, although not foreseen or expected, was in the contemplation of the parties to the insurance contract a natural and reasonable incident or consequence of the use of the automobile, and thus a risk against which they might reasonably expect those insured under the policy would be protected. See 7 Am.Jur.2d, § 82 at 387 (1963). Whether the requisite connection or degree of relationship exists depends upon the circumstances of the particular case. [Id. at 38, 312 A.2d at 669]
Using the same criterion, the conclusion follows that the rolling of the automobile down the sloping driveway with the Romano children in occupancy was a consequence of the use of the automobile, and encompassed by the automobile policy coverage.
Furthermore, in Westchester the homeowner's policy contained an exclusion clause similar in content to that found in the NJM policy. After review the court noted:
It seems clear to us that the language in the policies is mutually exclusive and that, as used in the homeowner's policy, is specifically designed to exclude the coverage provided under language in the standard family automobile policy for injuries arising out of the use of the motor vehicle insured thereunder. The significance of the exclusion in the homeowner's policy of coverage relating to use of automobiles is underscored by the specific inclusion of coverage with respect to animals, watercraft and tractors.
We think that an interpretation which excludes coverage in the present case is in keeping with the reasonable expectations of the parties to the homeowner's insurance contract.
The net result is that the automobile carriers are required to defend and provide coverage in the actions brought by plaintiff Potent et al. against the *28 Eisners and the Holcombes. The carriers which issued the homeowner's policies are not required to do so.
Defendant relies on McDonald v. Home Ins. Co., 97 N.J. Super. 501 (App.Div. 1967), which is inapposite. An automobile carrier was not involved. Home had disclaimed defense and coverage under a homeowner's policy, and the suit for a declaration of coverage was brought by the named insured. Thus, the court was confronted with the issue of coverage or no coverage. The sole cause of action spelled out in the complaint was the parents' negligent failure to supervise and control their child knowing of his violent and dangerous habits. In concluding that defendant carrier was obligated to provide coverage the court pointed out that "nowhere was it alleged that the McDonald's owned, maintained, operated or used the automobile...." Id. at 504.
In the present case the allegations of the complaint, "so as to permit such children to occupy and operate their motor vehicle to collide with the infant plaintiffs," fall squarely within the clear language of the exclusion in the homeowner's policy.
Our review of the entire record revealed a course of action, which, although not pertinent to the issue on appeal or necessary to its resolution, is of sufficient moment to warrant a pointed observation.
Pursuant to the insurance contract, Travelers assigned counsel to defend the Romanos in the basic negligence action. Assigned counsel then filed the third-party complaint, in the name of the insureds, against NJM seeking a declaration of coverage under the homeowner's policy. Absent a reversal, the case, in the normal course, would have gone to trial. It is conceivable that a jury, in response to specific interrogatories, could have found the Romanos guilty of negligence under the disputed third and fifth counts only. In such event the insureds would have been protected only to the extent of the $25,000 limit provided by the homeowner's policy, and deprived of the $100,000 protection provided by the automobile policy. At oral *29 argument counsel for respondent asserted that Travelers had voluntarily assumed a "moral obligation" to hold harmless the insureds. Such assurances could prove to be of small comfort in the face of a large verdict. Obviously, there was a real conflict of interest between Travelers and the Romanos which demanded separate representation for each.
An attorney owes his client an unswerving allegiance. The fact that the attorney is assigned by an insurance company does not alter the basic lawyer-client relationship, or the duty owed by lawyer to client. If an attorney finds that the discharge of his duty to the named insured brings him into conflict with the duty owed to the insurance company which engaged him, he cannot and should not continue to represent both. See DR 5-105(B), Disciplinary Rules of the Code of Professional Responsibility.
For the reasons stated above we reverse the summary judgment entered by the trial court, and hold that NJM is not required to provide a defense and coverage on the third and fifth counts of the complaint.
Reversed.