201 N.J. Super. 95 (1985)
492 A.2d 1028
ARTHUR T. WILLIAMSON, JR., PLAINTIFF-APPELLANT,
v.
CONTINENTAL CASUALTY COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 6, 1985.
Decided May 6, 1985.
*96 Before Judges MATTHEWS, FURMAN and HAVEY.
Eleanor H. Klein, attorney for appellant (Eleanor H. Klein and Jonathan R. Klein, on the brief).
Montano, Summers, Mullen, Manuel & Owens, attorneys for respondent (F. Herbert Owens, III, of counsel).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Plaintiff sustained serious personal injuries in an accident with Mack Messer's automobile while it was being driven by Messer's son Stanley. He sued the Messers, alleging negligent operation by Stanley, vicarious liability on Mack's part and negligent entrustment of the car by Mack to Stanley. Defendant Continental denied coverage under the homeowner's policy it had issued to Mack Messer on the ground that the injuries to plaintiff arose out of the operation of a motor vehicle and were specifically excluded by the terms of the policy. Mack Messer's automobile liability carrier offered the limits of its policy, $25,000, for personal injuries and $5,000 for property damage. The case was then settled with an agreement by the Messers to entry of a judgment against them for $265,000, of which they would pay $30,000, and assign Mack's rights under the homeowner's policy to plaintiff. In exchange, plaintiff agreed to accept the $30,000 and the assignment and to waive his right to proceed against the Messers personally for the balance of the $265,000 judgment.
*97 Plaintiff then instituted this action for the balance of his judgment, alleging that defendant wrongfully disclaimed coverage under the homeowner's policy and refused to provide Mack Messer with a defense to the negligent entrustment counts of the complaint in the underlying tort action. Plaintiff sent defendant copies of the complaint that he had filed against the Messers and their answer. In a cover letter plaintiff asserted that the negligence on Mack Messer's part alleged in count six of the complaint fell within the coverage of the homeowner's insurance policy which defendant had furnished to Mack and Rita Messer.
A claims manager for defendant wrote Messer and advised him that the company denied coverage under the homeowner's policy for the allegations in the amended complaint on the ground that the injuries to Williamson arose out of the operation of a motor vehicle and were specifically excluded from coverage by the terms of the policy. The limit of liability coverage under the homeowner's policy issued by defendant to the Messers was $50,000. On page 9 of the policy, under "Section II  Exclusions" the policy stated:
1. Coverage E  Personal Liability and Coverage F  Medical Payments to Others do not apply to bodily injury or property damage:
....
e. arising out of the ownership, maintenance, use, loading or unloading of:
........
2. A motor vehicle owned or operated by, or rented or loaned to any insured.
The trial judge held that there was no coverage and no duty to defend under the homeowner's policy by reason of the exclusion for bodily injury and property damage arising out of the ownership, maintenance, use, or loading or unloading of a motor vehicle. He noted that there was coverage under Mack Messer's automobile insurance policy and that the entire amount of that coverage had been paid. Accordingly, summary judgment was entered in defendant's favor and plaintiff now appeals.
*98 Plaintiff argues that the amended complaint set forth two separate and distinct negligent acts alleged to have been committed by defendants. The first act was committed in the home of Mack Messer, in leaving the keys to his car where Stanley could find them, and the second on the highway by Stanley Messer in his operation of the car. While the policy excluded coverage for the second act, coverage was not excluded for the first because it does not allege that plaintiff's injuries arose out of the ownership, maintenance or use of the motor vehicle. In support, plaintiff cites McDonald v. Home Ins. Co., 97 N.J. Super. 501 (App.Div. 1967). Plaintiff argues that the weight of authority in other jurisdictions holds that the negligent entrustment of a motor vehicle falls within the coverage provided by the standard homeowner's insurance policy, and that a narrow construction of the policy's exclusion requires reversal of the judgment here.
Defendant claims to distinguish the facts in McDonald from those in the present case and argues that two decisions subsequent to McDonald compel the result reached by the trial judge in the present case, citing Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29 (App.Div. 1973), aff'd o.b. 65 N.J. 152 (1974), and Bartels v. Romano, 171 N.J. Super. 23 (App.Div. 1979).
In McDonald v. Home Ins. Co., the McDonalds sued defendant alleging that a homeowner's policy required Home to defend them in an action brought by Walter Dorman for damages for the death of Dorman's son. Dorman's son was a passenger in a car owned by Mickey McDonald, a minor, and was killed when Mickey drove the car into a tree. Dorman's complaint alleged that the death of his son was caused by the two-fold negligence of the McDonalds: failing to supervise and control their child, knowing of his violent and dangerous habits, and causing or permitting Mickey to purchase and operate the car. 97 N.J. Super. at 502-503. Home refused to defend the McDonalds on the ground that the homeowner's policy, in the court's words, "did not apply `to the ownership, maintenance, *99 operation, use, loading or unloading of automobiles while away from the premises * * *.'" 97 N.J. Super. at 503. The court held that Home was obliged to defend the McDonalds, stating,
The action against the McDonalds was not based upon "the ownership, maintenance, operation, use, loading or unloading of * * * automobiles * * *," even though the immediate cause of the injury and death of Dorman, Jr. was Mickey's operation of the automobile. The action was based upon their alleged negligence in failing to supervise and control their child, knowing of his violent and dangerous habits.... The details of the alleged negligence were spelled out in the complaint and included causing and permitting Mickey to purchase and operate the automobile, but nowhere was it alleged that the McDonalds owned, maintained, operated or used the automobile, or that the automobile was negligently driven by them or their agent.
In short, regardless of the truth of its allegations, there was nothing in the Dorman complaint which brought the claim within the policy exclusion. [97 N.J. Super. at 503-504]
Plaintiff relies on McDonald to support his position that Continental was obliged to defend and indemnify Mack Messer. The first aspect of the McDonald's alleged negligence, failing to supervise and control their child, however, is not a factor in the present case since Stanley Messer was 18 at the time of the accident. The fifth and sixth counts of Williamson's complaint against the Messers sounded in negligent entrustment. While the second aspect of the McDonald's alleged negligence, permitting or causing Mickey to purchase and operate the car, also sounded in negligent entrustment, the facts of the entrustment in McDonald are distinguishable from those in the present case and its holding is thus inapplicable.
The crucial difference, in our view, is that while the McDonalds could control their son's access to his car, they did not own it, nor was their failure to deny him access an aspect of their use of the vehicle. Thus, young Dorman's death did not involve the ownership, operation or use of the vehicle by the McDonalds. In this case, by way of contrast, the car was owned by Mack Messer and his negligence in either entrusting it to his son Stanley (fifth count) or leaving the keys in a place accessible to Stanley (sixth count) was an aspect of Mack's ownership or use of the car. Thus the factual allegations underlying the negligent entrustment are fundamentally different *100 from those in McDonald, in that they necessarily involve Mack's ownership and/or use of the vehicle.
There would be no liability on Mack Messer's part for negligent entrustment but for Stanley's negligent use of the car owned by Mack. The action complained of by plaintiff, negligent entrustment, thus subsumes use of a motor vehicle owned by the named insured, coverage for which is excluded by the policy. In McDonald, as we have noted, the vehicle was not owned by the insured.
Another important factor in the present case is that Stanley is an insured under the policy issued by defendant. Thus, not only was the vehicle owned by an insured, plaintiff's injuries arose out of its operation by an insured, coverage for which is expressly excluded by the policy. There is no indication in McDonald that Mickey was an insured, nor that the policy contained precisely the same exclusion. We find McDonald to be inapplicable to the present case.
The elements of motor vehicle use and ownership by the insureds in this case bring it within the holdings in Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29 (App.Div. 1973); Bartels v. Romano, 171 N.J. Super. 23 (App. Div. 1979), both decided after McDonald. In Westchester, a bicyclist was struck by a piece of wood thrown by a minor passenger out of a car driven by another minor. 126 N.J. Super. at 33. In addition to suing the driver and passenger, the bicyclist sued their parents alleging negligence in the care, control and discipline of their children. Judge Carton, writing for this court, phrased the basic issue as:
... whether the injury sustained by the bicyclist was one "aris[ing] out of the ownership, maintenance or use of the owned automobile * * *" within the meaning of the automobile insurance policies. Corollary to this issue is the applicability of an exclusionary clause of the homeowner's policy making its coverage inapplicable to "the * * * use of automobiles * * *. [126 N.J. Super. at 32-33]
The court considered that the phrase "arising out of" "must be interpreted in a broad and comprehensive sense," and concluded that "although Holcombe's act in throwing the stick *101 from the automobile may not have been foreseen or expected, it was a sufficiently foreseeable consequence of the use of the vehicle to mandate coverage under the terms of the [automobile] policies." 126 N.J. Super. at 38-39. Turning to the exclusionary clauses in the homeowner's policies, which were nearly identical to the exclusionary clause in the present case, Judge Carton wrote:
We recognize that the general rule of construction of exclusions in insurance policies is that they must be strongly construed against the insurer. However, we may not disregard their clear import and intent.
Homeowner's policies of the kind here involved are of relatively recent origin. Their growth and development can be generally ascribed to the rise of tort claims of the kind made against homeowners and their families, and the need for wider protection than that afforded under ordinary residential liability policies. Although the homeowner's policy is not confined to protection for risks arising strictly out of the use of residential premises, it is, as the name suggests, home oriented.
It seems clear to us that the language in the policies is mutually exclusive and that, as used in the homeowner's policy, is specifically designed to exclude the coverage provided under language in the standard family automobile policy for injuries arising out of the use of the motor vehicle insured thereunder....
We think that an interpretation which excludes coverage in the present case is in keeping with the reasonable expectations of the parties to the homeowner's insurance contract. [126 N.J. Super. at 41-42]
We do not have the terms of Mack Messer's automobile insurance policy before us. We find this of no concern since the auto insurer has settled with plaintiff. Plainly there was coverage under the automobile policy since plaintiff's injuries arose out of the use of the automobile and it should follow, as it did in Westchester, that the language in the automobile and homeowner's policies is mutually exclusive. This result was reached in Westchester notwithstanding the bicyclist's allegations of parental negligence in controlling their children, which might be viewed, as plaintiff urges here, as acts separate from the use of the automobile.
Plaintiff does seek to distinguish the present case from Bartels v. Romano, supra, 171 N.J. Super. 23. In that case the Romano children were occupying the family car while waiting for their mother. In some manner it was caused to roll backward and strike the Bartels' children. 171 N.J. Super. at *102 25. The Bartels sued the Romanos, alleging, among other things, that "defendants `so carelessly and negligently supervised or failed to supervise their infant children and other children under their care, custody and control so as to permit such children to occupy and operate the motor vehicle which occupation of said motor vehicle caused said vehicle to collide with infant plaintiff ...'" 171 N.J. Super. at 26. Relying on Westchester, this court concluded that "the rolling of the automobile down the sloping driveway with the Romano children in occupancy was a consequence of the use of the automobile, and encompassed by the automobile policy coverage." 171 N.J. Super. at 27. On the question of coverage under the homeowner's policy, which contained an exclusion clause identical to the one in the present case, the court relied on Westchester, and concluded that the allegations of the complaint "fall squarely within the clear language of the exclusion in the homeowner's policy." 171 N.J. Super. at 27-28. This court pointed out that in McDonald the court "was confronted with the issue of coverage or no coverage," and distinguished McDonald on the ground that there was no allegation in that case that the McDonalds owned, maintained, operated or used the automobile. 171 N.J. Super. at 28.
Westchester and Bartels both stand for the proposition that where injuries arise out of the use of an automobile, coverage is excluded by the standard homeowner's policy. Plaintiff makes much in his brief over the reference in Bartels to "the issue of coverage or no coverage" in McDonald and argues that Bartels was wrongly decided because coverage should not depend upon who has the deepest pocket. This argument misses the technical distinction drawn by us in Bartels based on the lack of allegations in McDonald regarding ownership or use of the motor vehicle. As we stated in our earlier discussion of McDonald, this distinction is critical and it is the elements of use and ownership by the insured in this case which brings it within the holdings of Westchester and Bartels and distinguishes it from McDonald.
*103 Plaintiff asserts that "[t]he weight of authority holds that the negligent entrustment of a motor vehicle is an act which is encompassed within the coverage provided by the standard homeowner's insurance policy." This is not an accurate representation of the split in authority which currently exists among the various jurisdictions outside of New Jersey. See Annotation, "Construction and effect of provision excluding liability for automobile-related injuries or damage from coverage of homeowner's or personal liability policy," 6 A.L.R.4th 555 (1981). The out-of-state opinions cited by plaintiff rely, to greater or lesser degrees, on our decision in McDonald. See Republic Vanguard Insurance Co. v. Buehl, 295 Minn. 327, 204 N.W.2d 426, 429 (Sup.Ct. 1973); Lalomia v. Bankers & Shippers Ins. Co., 35 App.Div.2d 114, 312 N.Y.S.2d 1018, 1021 (App.Div. 1970), insurer's appeal dismissed 27 N.Y.2d 796, 315 N.Y.S.2d 856, 264 N.E.2d 349 (Ct.App. 1972), and aff'd o.b. on plaintiff's appeal 31 N.Y.2d 830, 339 N.Y.S.2d 680, 291 N.E.2d 724 (Ct.App. 1972); Allstate Insurance Co. v. Reliance Insurance Co., 85 Misc.2d 734, 380 N.Y.S.2d 923, 927 (Sup.Ct. 1976); Upland Mutual Insurance Inc. v. Noel, 214 Kan. 145, 519 P.2d 737, 741-742 (Sup.Ct. 1974); Douglass v. Hartford Ins. Co., 602 F.2d 934, 937 (10 Cir.1979).
Courts in several other jurisdictions have held that injuries arising from the negligent entrustment of a motor vehicle are not covered by the standard homeowner's insurance policy. See Safeco Ins. Co. v. Gilstrap, 141 Cal. App.3d 524, 190 Cal. Rptr. 425 (Ct.App. 1983); Michigan Mut. Ins. Co. v. Sunstrum, 111 Mich. App. 98, 315 N.W.2d 154 (Ct.App. 1981); Fidelity & Guaranty Ins. Underwriters Inc. v. McManus, 633 S.W.2d 787 (Tex.Sup.Ct. 1982); Bankert v. Threshermen's Mut. Ins. Co., 105 Wis.2d 438, 313 N.W.2d 854 (Ct.App. 1981), aff'd sub nom. Bankert by Habush v. Threshermen's Mut. Ins. Co., 110 Wis.2d 469, 329 N.W.2d 150 (Sup.Ct. 1983); Lumberman's Mut. Casualty Co. v. Kosies, 124 Ariz. 136, 602 P.2d 517 (Ct.App. 1979); Aetna Casualty and Surety Co. v. American Mfrs Mut. Ins. Co., 261 Ark. 326, 547 S.W.2d 757 (Sup.Ct. 1977); *104 Gargano v. Liberty Mut. Ins. Co., 384 So.2d 220 (Fla. Dist. Ct. App. 1980); State Farm Fire & Casualty Co. v. McGlawn, 84 Ill. App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (App.Ct. 1980); Barnstable County Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 373 N.E.2d 966 (Sup.Jud.Ct. 1978); Great Cent. Ins. Co. v. Roemmich, 291 N.W.2d 772 (S.D.Sup.Ct. 1980).
Many of these latter opinions rely on Cooter v. State Farm Fire & Cas. Co., 344 So.2d 496 (Ala.Sup.Ct. 1977), where the passenger sought to recover from the homeowner's insurer of the driver's father despite an exclusionary clause identical to the one involved in the present case. 344 So.2d at 496-497. The Alabama Supreme Court accepted the insurer's argument that "plaintiff's injuries arose out of the insured's ownership as well as his son's use of the vehicle", 344 So.2d at 498 (emphasis in original), and criticized the line of decisions holding that there is coverage under the standard homeowner's policy:
The plain wording of the exclusionary provision reveals the deficiency in this rationale. While liability (apart from coverage) for negligent entrustment is not conditioned upon the entrustor's ownership or use of the vehicle, negligent use by the one to whom it is entrusted is essential to recovery. It is the concurrence of these dual elements  negligent entrustment by the owner or custodian of the instrumentality plus its negligent use by entrustee  that is missing in the rationale of those cases upholding coverage. Taken literally, this line of reasoning  that negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability  the injured party could recover absent any showing that the incompetent to whom the vehicle is entrusted caused the injury by his negligent use of the vehicle. As we have already observed, this does not comport with the elements that make up this tort concept of negligent entrustment.
The clear and unambiguous language here applicable is susceptible of but one meaning; that this homeowner's policy excludes personal liability coverage for bodily injury arising out of the ownership and use of an automobile owned and operated by the insured. It is the very condition spelled out in this exclusion from coverage that must be proved in fixing liability against the insured under the negligent entrustment doctrine. Once the essential elements of the tort claim for negligent entrustment of a motor vehicle are proved, the policy exclusion is likewise legally operative so as to effectively bar liability of the insurer. [344 So.2d at 499]
The reasoning of Cooter is clearly apposite to the present case. But for Stanley Messer's negligent use of Mack Messer's car, no liability could result to Mack Messer. Plaintiff's injuries *105 thus arose out of the use of a motor vehicle owned by an insured, coverage for which is explicitly excluded by the policy.
Finally, plaintiff argues that a narrow construction of the exclusionary clause compels the conclusion that there is coverage for his injuries under the policy issued by defendant. We agree with the proposition that where the language of a policy will support two meanings, it will be construed in favor of the insured. Aetna Ins. Company v. Weiss, 174 N.J. Super. 292 (App.Div. 1980), certif. den. 85 N.J. 127 (1980). We also recognized this rule in Westchester, 126 N.J. Super. at 41, but observed that "we may not disregard their clear import and intent." Ibid. As it was in both Westchester and Bartels, the clear intent of the exclusion in the present policy is to deny coverage for injuries, such as those suffered by plaintiff, which arise out of the ownership of a motor vehicle owned by the insured.
Affirmed.