337 S.E.2d 12

**William F. HUGGINS, Sr., etc., Plaintiff,**

**v.**

**TRI-COUNTY BONDING CO., etc., and John C. Myers, Defendants,**

**and**

**Joseph W. MYERS, et al., Defendants and Third Party Plaintiffs,**

**v.**

**NATIONWIDE MUTUAL FIRE INS. CO., etc., Third Party Defendant.**

**No. CC953.**

Supreme Court of Appeals of West Virginia.

Nov. 8, 1985.

---

Phillips, Gardill, Kaiser, Boos and Hartley, R. Dean Hartley, Wheeling, for plaintiff Huggins.

Herbert G. Underwood, and Irene M. Keeley, Steptoe & Johnson, Clarksburg, for Myers.

Goodwin & Quinn, Suzanne Quinn, Susan Y. Dodd, Thomas A. Goodwin, Wheeling, for Nationwide Ins.

MILLER, Chief Justice:

The Circuit Court of Marshall County asks us to resolve two related certified questions in order to determine whether Nationwide Mutual Fire Insurance Company (Nationwide) is obligated to defend its homeowners policyholder in a negligent entrustment action.

The action arises from a two-vehicle accident which resulted in injuries to the plaintiff's ward, Mary Lou Blakemore. One of the vehicles was driven by the defendant John Myers, the eighteen-year-old son of the defendant Joseph Myers. The car driven by John Myers was owned by Tri-County Bonding Company (Tri-County). Joseph Myers is the president of Tri-County and owns all of its stock. In addition to naming Tri-County and John Myers as defendants, the plaintiff named Joseph Myers as a defendant alleging the father was negligent in entrusting his son to use the car.

Joseph Myers owned what is termed an Elite Homeowners Policy issued by Nationwide, and asked Nationwide to defend him against the negligent entrustment action. Nationwide refused on the ground that the liability protection in the homeowners policy only covered negligent "personal acts" and that the father was acting in his corporate, not personal, capacity when he entrusted the company car to his son. Furthermore, Nationwide claims the policy excludes coverage for claims involving motor vehicles and for claims arising out of business pursuits. It asserts the accident occurred while the Tri-County car was being used for business purposes.

Nationwide's version of the facts is that the father, acting as president of Tri-County, asked his son, who was a trainee in the business, to use the Tri-County car to deliver a corporate contribution to his son's school's Spanish Club which was holding a fund raising event known as the "Spanish Fiesta," and that while on this corporate errand, the son was involved in the accident.

Joseph Myers asserts in his brief that his son planned to attend the school dance to meet his date and that the permission to use the company car was primarily for that purpose and only incidentally to deliver the check.

After Nationwide refused to defend Joseph Myers, he filed a cross-claim against Nationwide. The Circuit Court of Marshall County ruled Nationwide had a duty to defend Myers and certified the following questions for our resolution: (1) Does Nationwide's homeowners liability policy generally afford coverage for a claim of negligent entrustment? and (2) If Nationwide's policy does generally afford coverage for a claim of negligent entrustment, do any of the policy's exclusions apply so as to except the claim in this case?

I.

*The Coverage*

The initial coverage language in Nationwide's policy relied on by Myers is found in Section II *Protection Against Liability*, which provides insurance against "loss from damages for negligent personal

acts...." [1] This is also coupled with the claim that in the initial portion of the policy, there is very broad language summarizing the policy benefits, which language states: "ELITE POLICY Protecting your home and possessions against loss from Fire, Windstorm, Theft and other perils ... plus claims arising from Legal Liability." (Ellipsis in original).

Nationwide denied coverage, relying on the exclusionary language of Section II, which excludes coverage for "the ownership, maintenance, operation or use ... of land motor vehicles." [2] A second exclusion, termed business pursuits, was also relied on to deny coverage. [3]

█ It is clear that the liability coverage is quite broad as set out in Section II, *Protection Against Liability.* This provides coverage "against loss from damages for negligent personal acts...." This broad coverage concept is reinforced by the provisions of Section II(A), which obligates Nationwide "[t]o pay on behalf of the Insured all sums which he shall become legally obligated to pay (1) as damages because of bodily injury, sickness or disease, and death at any time resulting therefrom, sustained by any one person...."

There is no language in the liability coverage section which confines liability to acts arising on the premises covered by the policy. [4] We think it is clear that the liability policy coverage is sufficiently comprehensive to cover negligent personal acts occurring on or off the insured's premises committed by an insured. This would include a negligent entrustment claim such as asserted in the present case. [5]

1. The liability coverage language is:

> *"Protection Against Liability*
> "Section II of this Homeowner's Policy insures those named in the Declarations against loss from damages for negligent personal acts or damage for negligence arising out of the ownership, maintenance or use of real or personal property, subject to the provisions and conditions stated herein and subject to the limit of liability stated in the Declarations for liability."

2. The portion of the exclusionary language relating to automobiles is:

> *"Part II—Section II of This Policy Does Not Apply:*
> 1. *Under A (Bodily Injury and Property Damage) and C (Guests Medical Expenses)* to:
> * * *
> e. the ownership, maintenance, operation or use, including loading or unloading, of land motor vehicles, trailers or vehicles operated on rails, watercraft owned by or rented to an Insured, if with inboard motor power exceeding 50 horsepower or any sailing vessel exceeding twenty-six feet in length, or aircraft when away from the premises for which insurance is provided, *except* to any farm-type tractor, farm implement, or any land motor vehicle designed for use principally on the described premises and off public roads and not subject to motor vehicle registration; ..." (Emphasis in original).

3. The business pursuits exclusion provides:

> *"Part II—Section II of This Policy Does Not Apply:*
> 1. *Under A (Bodily Injury and Property Damage) and C (Guests Medical Expenses)* to:
> * * *

> "f. any errors or omissions in the rendering of a professional service, *except* teaching; activities in connection with a business solely owned by an Insured or owned by a partnership of which an Insured is a partner, *except* such acts as are ordinarily incident to nonbusiness pursuits or activities on the described premises incident to the operation of an office, school, studio, barber or beauty shop and only when such occupancy has been indicated in the Declarations of this policy; ..." (Emphasis in original).

4. Some courts appear to have given weight to the fact that the homeowners policy contained language confining the liability to acts occurring on the premises. *E.g., Safeco Ins. Co. v. Gilstrap,* 141 Cal.App.3d 524, 190 Cal.Rptr. 425 (1983); *Insurance Co. of North America v. Waterhouse,* 424 A.2d 675 (Del.Super.Ct.1980); *Williamson v. Continental Cas. Co.,* 201 N.J.Super. 95, 492 A.2d 1028 (1985); *Great Cent. Ins. Co. v. Roemmich,* 291 N.W.2d 772 (S.D.1980).

5. None of the parties contest that a negligent entrustment cause of action exists in this State as recognized in Syllabus Points 11 and 12 of *Payne v. Kinder,* 147 W.Va. 352, 127 S.E.2d 726 (1962):

> "11. Liability for the negligence of an incompetent driver to whom an automobile is entrusted does not arise out of the relationship of the parties, but from the act of entrustment of the motor vehicle, with permission to operate it, to a person whose incompetency, inexperience, or recklessness is known or should have been known by the owner.
> "12. An owner who entrusts his motor vehicle to a person whom he knows, or from the circumstances is charged with knowing, to be incompetent or unfit to drive it is liable for injury inflicted which results from the use of

The general rule is that a homeowners liability insurance policy that covers loss from damages for negligent personal acts includes coverage for negligent entrustment absent any express exclusion to the contrary. *See, e.g., United Fire & Cas. Co. v. Day,* 657 P.2d 981 (Colo.Ct.App. 1982); *Upland Mut. Ins. Co. v. Noel,* 214 Kan. 145, 519 P.2d 737 (1974); *Lalomia v. Bankers & Shippers Ins. Co.,* 35 A.D.2d 114, 312 N.Y.S.2d 1018 (1970), *aff'd,* 31 N.Y.2d 830, 291 N.E.2d 724, 339 N.Y.S.2d 680 (1972); Annot., 6 A.L.R.4th 555 (1981).[6] We, therefore, find that because Nationwide's homeowners policy covers negligent personal acts, it does cover losses due to negligent entrustment.

## II.

### *The Exclusions*

### A. *Automobile Use*

The parties are in sharp disagreement over the meaning of the language in the exclusion section of the liability portion of

the policy which withdraws coverage for "the ownership, maintenance, operation or use ... of land motor vehicles."[7] Nationwide asserts that a number of courts have treated this language as excluding coverage where a negligently entrusted vehicle causes injury to a third party.[8]

Joseph Myers, however, argues that in most if not all of these cases, the exclusionary language was broader because it was prefaced with the phrase "arises out of the ownership, maintenance, operation or use, including loading or unloading of a land motor vehicle."[9] This argument proceeds on the basis that where there is no "arising out of" language, then courts have found that the exclusion does not bar a negligent entrustment suit.[10]

Unfortunately in many of the cases relied upon by the parties, there is no thorough discussion of the issues. Some courts appear to be motivated by the thought that by styling the policy a "homeowners" coverage, this means that the liability phase of the policy is limited to occurrences happen-

---

the automobile by the driver if the injury was proximately caused by the disqualification, incompetency, inexperience, intoxication or recklessness of the driver."

**6.** A number of courts which have addressed the negligent entrustment theory under a homeowners policy appear to assume there is initial coverage and focus their discussion on the exclusions. *E.g., Grange Mut. Cas. Co. v. King,* 174 Ga.App. 716, 331 S.E.2d 41 (1985); *Fillmore v. Iowa Nat'l Mut. Ins. Co.,* 344 N.W.2d 875 (Minn. App.1984); *Williamson v. Continental Cas. Co.,* 201 N.J.Super. 95, 492 A.2d 1028 (1985).

**7.** *See* note 2, *supra,* for the complete language of this exclusion.

**8.** *See, e.g., Cooter v. State Farm Fire & Cas. Co.,* 344 So.2d 496 (Ala.1977); *Lumbermens Mut. Cas. Co. v. Kosies,* 124 Ariz. 136, 602 P.2d 517 (App.1979); *Aetna Cas. & Sur. Co. v. American Mfrs. Mut. Ins. Co.,* 261 Ark. 326, 547 S.W.2d 757 (1977); *Safeco Ins. Co. v. Gilstrap,* 141 Cal. App.3d 524, 190 Cal.Rptr. 425 (1983); *Insurance Co. of North America v. Waterhouse,* 424 A.2d 675 (Del.Super.Ct.1980); *Gargano v. Liberty Mut. Ins. Co.,* 384 So.2d 220 (Fla.Dist.Ct.App. 1980); *Grange Mut. Cas. Co. v. King,* 174 Ga. App. 716, 331 S.E.2d 41 (1985); *Tuell v. State Farm Fire & Cas. Co.,* 132 Ill.App.3d 449, 87 Ill.Dec. 469, 477 N.E.2d 70 (1985); *State Farm Fire & Cas. Co. v. McGlawn,* 84 Ill.App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980); *American Universal Ins. Co. v. Cummings,* 475 A.2d

1136 (Me.1984); *Barnstable County Mut. Fire Ins. Co. v. Lally,* 374 Mass. 602, 373 N.E.2d 966 (1978); *Michigan Mut. Ins. Co. v. Sunstrum,* 111 Mich.App. 98, 315 N.W.2d 154 (1981); *Fillmore v. Iowa Nat'l Mut. Ins. Co.,* 344 N.W.2d 875 (Minn.App.1984); *Shelter Mut. Ins. Co. v. Politte,* 663 S.W.2d 777 (Mo.Ct.App.1983); *Williamson v. Continental Cas. Co.,* 201 N.J.Super. 95, 492 A.2d 1028 (1985); *Great Cent. Ins. Co. v. Roemmich,* 291 N.W.2d 772 (S.D.1980); *Mutual Serv. Cas. Ins. Co. v. Koenigs,* 110 Wis.2d 522, 329 N.W.2d 157 (1983).

**9.** A typical case where the court considered the "arising out of" language as being expansive enough to cover negligent entrustment is *Cooter v. State Farm Fire & Cas. Co.,* 344 So.2d 496, 499 (Ala.1977), where the court stated: "The clear and unambiguous language here applicable is susceptible of but one meaning; that this homeowner's policy excludes personal liability coverage for bodily injury arising out of the ownership and use of an automobile owned or operated by the insured."

**10.** *See, e.g., Upland Mut. Ins. Co. v. Noel,* 214 Kan. 145, 519 P.2d 737 (1974). *Accord Republic Vanguard Ins. Co. v. Buehl,* 295 Minn. 327, 204 N.W.2d 426 (1973); *McDonald v. Home Ins. Co.,* 97 N.J.Super. 501, 235 A.2d 480 (1967); *Lalomia v. Bankers & Shippers Ins. Co., supra; Government Employees Ins. Co. v. Chahalis,* 72 Misc.2d 207, 338 N.Y.S.2d 348 (1972).

**648**

ing on the described premises. *See, e.g., Safeco Ins. Co. v. Gilstrap,* 141 Cal.App.3d 524, 533, 190 Cal.Rptr. 425, 431 (1983); *Insurance Co. of North America v. Waterhouse,* 424 A.2d 675, 682 (Del.Super.Ct.1980); *Williamson v. Continental Cas. Co.,* 201 N.J.Super. 95, 101, 492 A.2d 1028, 1032 (1985). As we have earlier noted, there is no premises limitation contained in the liability section of the policy involved in this case.

We do not disagree with the principle advanced by some courts that the liability feature of a homeowners policy is not meant to be coextensive with the ordinary automobile liability policy. *E.g., Fillmore v. Iowa Nat'l Mut. Ins. Co.,* 344 N.W.2d 875, 878 (Minn.App.1984); *Bankert v. Threshermen's Mut. Ins. Co.,* 105 Wis.2d 438, 446, 313 N.W.2d 854, 858 (Ct.App. 1981); 7A J. Appleman, Insurance Law & Practice § 4500.04 (1979). However, this does not mean that in certain situations there may not be an occasional overlap.

■ Simply because a person can purchase automobile liability insurance that will provide protection against losses due to the use of automobiles does not necessarily negate coverage under a comprehensive homeowners policy. A policy must be interpreted on its own terms without reference to what other insurance is owned or available to the insured. Not all home owners are car owners. Hence, it would be unreasonable to deny liability protection to a home owner when the liability, in some way, involved someone else's car that the home owner had no reason or interest to insure. *Accord Aetna Cas. & Sur. Co. v. Drake,* 343 Pa.Super. 114, 494 A.2d 381 (1985).

Nationwide's liability coverage in this case is quite broad. It does not limit liability to occurrences on the insured's premis-

es. For example, it extends coverage to teachers acting in their professional capacity and also covers business activities that are ordinarily incident to nonbusiness pursuits. Furthermore, it covers business activities on the insured's premises provided such businesses are indicated in the policy. It also applies to the use of some watercraft and farm equipment.[11] In other words, the policyholder could reasonably expect that the liability coverage in this policy is much more comprehensive than a policy that only covers liability arising from accidents on the home owner's premises.

Myers relies on the seminal decision of *McDonald v. Home Ins. Co.,* 97 N.J.Super. 501, 235 A.2d 480 (1967), which held that a homeowners policy covered negligent entrustment of an automobile. Nationwide contends that decision was overruled by *Williamson v. Continental Cas. Co.,* 201 N.J.Super. 95, 492 A.2d 1028 (1985), but we do not agree. In *McDonald* the insured did not own the vehicle but had negligently permitted his minor son, over whom he exercised control, to own a vehicle. While driving this car, the son injured a third party. *Williamson* recognized the continued validity of *McDonald* which was a negligent entrustment action based on an automobile not owned by the insured.[12]

It must be remembered that in this case, the defendant, Joseph Myers, did not own the vehicle as it was owned by his corporation, Tri-County. Furthermore, he was not using or operating the car at the time of the accident nor was the accident a result of some improper act of maintenance.

Admittedly, the accident resulted from the son's use of the vehicle. Nationwide claims that the giving of the right to use the vehicle by Mr. Myers to his son was in his capacity as president of the company. Consequently, the initial entrustment was not a "personal act" as contemplated in the

11. *See* notes 2 and 3, *supra.*

12. The salient language from *Williamson,* 201 N.J.Super. at 102, 492 A.2d at 1033, is:
"This argument misses the technical distinction drawn by us in *Bartels* [*v. Romano,* 171 N.J.Super. 23, 407 A.2d 1248 (1979),] based on the lack of allegations in *McDonald* [*v. Home Ins. Co.,* 97 N.J.Super. 501, 235 A.2d 480 (1967),] regarding ownership or use of the

motor vehicle. As we stated in our earlier discussion of *McDonald,* this distinction is critical and it is the elements of use and ownership by the insured in this case which brings it within the holdings of *Westchester* [*Fire Ins. Co. v. Continental Ins. Cos.,* 126 N.J.Super. 29, 312 A.2d 664 (1973),] and *Bartels* and distinguishes it from *McDonald.*"

initial coverage language. We find the distinction between what is a negligent personal act as distinguished from a negligent business act to be ambiguous and probably best resolved under the business exclusion provision, which we discuss in Part II(B).

There still remains the question of whether the son's use of the vehicle forecloses coverage. We find it does not in the face of the broad liability coverage and the lack of any expansive language such as used in other homeowners policies where the language in the automobile exclusion contains the phrase "arising out of" the ownership, maintenance, or use of the vehicle.

■ Furthermore, the critical element of a negligent entrustment cause of action is the initial improper loaning of the vehicle—improper in the sense that it is given to a person who is known to be likely to cause an unreasonable risk of harm to others. *Payne v. Kinder*, 147 W.Va. 352, 127 S.E.2d 726 (1962); Restatement (Second) of Torts § 308 (1965); W. Prosser & W. Keeton, The Law of Torts § 73 (5th ed. 1984).

Thus, the driver's negligent operation is not the critical factor in a negligent entrustment action, although it is necessary to complete the causal connection between the original negligent act (the entrustment) and the ultimate injury.[13]

■ When the policy is viewed in these terms, we believe an ambiguity exists with regard to coverage for the negligent entrustment of a nonowned motor vehicle. The liability coverage which is cast in terms of "personal acts" is broad enough to cover negligent entrustment. The automobile exclusion does not by its plain terms exclude coverage on a nonowned vehicle. As we have previously noted, the operation and use of a vehicle is not a critical component of a negligent entrustment theory. We have traditionally stated that:

"Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syllabus Point 1, *Prete v. Merchants Property Ins. Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976).

When faced with ambiguities in an insurance policy, this Court has followed the general rule that:

"An insurance policy which requires construction must be construed liberally in favor of the insured." Syllabus Point 3, *Polan v. Travelers Ins. Co.*, 156 W.Va. 250, 192 S.E.2d 481 (1972).

*See also Hensley v. Erie Ins. Co.*, 168 W.Va. 172, 283 S.E.2d 227 (1981); *Broy v. Inland Mut. Ins. Co.*, 160 W.Va. 138, 233 S.E.2d 131 (1977); *Thompson v. State Automobile Ins. Co.*, 122 W.Va. 551, 11 S.E.2d 849 (1940). "This rule is but a tacit acknowledgment that the insurance policy is prepared by the company and therefore, the average policyholder has no opportunity to influence the policy language." *Hensley*, 168 W.Va. 176, 283 S.E.2d at 229.

■ Under this law, we resolve the issue in favor of the policyholder and conclude that where a home owner negligently entrusts a nonowned vehicle to his son who injures a third party, exclusionary language in the homeowners liability policy in relation to "the ownership, maintenance, operation or use ... of a land motor vehicle" does not exclude coverage for suits for negligent entrustment where the initial liability coverage is for "loss from damages for negligent personal acts."

■ A final point raised by Nationwide is that its policy protects against occurrences that cause a liability, and not against theories of liability. Consequently, it argues that if a loss for which the insured is liable was caused by an occurrence involv-

---

**13.** We, as well as other courts, have recognized that where the accident was not the result of a condition covered in the original negligent entrustment the person who entrusted the vehicle is not liable. *Payne v. Kinder, supra; see also Cooter v. State Farm Fire & Cas. Co.*, 344 So.2d 496 (Ala.1977); *State Farm Fire & Cas. Co. v. McGlawn*, 84 Ill.App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980); *Shelter Mut. Ins. Co. v. Politte*, 663 S.W.2d 777 (Mo.App.1983); *Hines v. Nelson*, 547 S.W.2d 378 (Tex.Civ.App.1977).

ing a land motor vehicle, there is no coverage regardless of the theory upon which the liability is grounded. Nationwide does not point to anything in its own policy that says this, but instead relies on the holdings of other courts construing other policies. *See, e.g., Aetna Cas. and Sur. Co. v. American Mfrs. Mut. Ins. Co.,* 261 Ark. 326, 547 S.W.2d 757 (1977); *American Universal Ins. Co. v. Cummings,* 475 A.2d 1136 (Me.1984); *Bankert v. Threshermen's Mut. Ins. Co.,* 110 Wis.2d 469, 329 N.W.2d 150 (1983); *Mutual Serv. Cas. Ins. Co. v. Koenigs,* 110 Wis.2d 522, 329 N.W.2d 157 (1983).

However, the cases that make the distinction between "occurrences" and "theories" of liability are generally those where the insurance policy expressly limits coverage to "occurrences" as that term is defined in those policies.[14] The Nationwide policy does not have such an express limitation but instead uses the broad term "negligent personal acts."

Furthermore, Nationwide's policy does make distinctions according to theories of liability. For instance, the policy expressly excludes coverage if the liability is based on intentional acts or if the liability is premised on professional negligence. Thus, the argument that the policy only covers occurrences and not theories of liability is without merit.

We, therefore, agree with the trial court that the automobile exclusion does not foreclose coverage for a negligent entrustment action as presented in this case.

### B. *Business Pursuits*

The business pursuits exclusion states that the coverage does not apply to activities in connection with a business solely owned by an insured.[15] This Court has

ruled that "[t]he question of whether a particular activity or course of conduct comes within this definition of 'business pursuits' must necessarily be determined on a case-by-case basis, with due consideration given to the facts and circumstances of each case." *Camden Fire Ins. Ass'n v. Johnson,* 170 W.Va. 313, 316, 294 S.E.2d 116, 119 (1982).

In *Camden Fire,* we were called upon to determine whether a homeowners policy with a business pursuits exclusion applied to avoid coverage for a woman who did occasional babysitting in her home. One of the children was injured while in her care and the child's parent sought to recover damages. We gave this general statement in Syllabus Point 1 of *Camden Fire:*

> "The term 'business pursuits', when used in a clause of an insurance policy excluding from personal liability coverage injuries 'arising out of business pursuits of any insured', contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit or a livelihood."

The record before this Court shows the parties are not in agreement with respect to the facts and circumstances surrounding the delivery of the check to the high school Spanish Club. Nationwide alleges the primary purpose of the trip to school was to deliver the corporate contribution. Conversely, Myers claims his son was going to the school primarily for a dance and that the delivery of the check was only incidental to an otherwise planned personal use of the automobile. The circuit court found that "neither John nor Joseph Myers was engaged in the business of bonding at the time of the entrustment or of the accident."[16]

---

**14.** For instance, in *Bankert,* 110 Wis.2d at 478–79, 329 N.W.2d at 154, the coverage provision reads as follows: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an *occurrence....*" An "occurrence" is defined in the policy as: "[A]n accident, including injurious exposure to conditions, which results in bodily injury or property damage neither ex-

pected nor intended from the standpoint of the insured."

**15.** For the language of this exclusion, *see* note 3, *supra.*

**16.** The business pursuits exclusion in this case contains an exception for nonbusiness pursuits or activities, *see* note 3, *supra,* which courts have held to be activities that are ordinarily incident to nonbusiness pursuits. *See, e.g., Myr-*

Possibly at trial additional facts will be developed which would clarify the business pursuits issue. For purposes of this certification, we cannot say the circuit court was clearly wrong. Ultimately, the matter may have to be resolved by a jury under proper instructions.

To answer the second certified question, we hold that none of the policy exclusions apply in this case to deny coverage under Nationwide's homeowners policy for a claim of negligent entrustment.

The certified questions having been affirmed as answered by the circuit court, we remand the case.

Remanded.

til v. Hartford Fire Ins. Co., 510 F.Supp. 1198 (E.D.Pa.1981); Reis v. Aetna Cas. & Sur. Co., 69 Ill.App.3d 777, 25 Ill.Dec. 824, 387 N.E.2d 700 (1978); Aetna Ins. Co. v. Janson, 60 Ill.App.3d 957, 18 Ill.Dec. 143, 377 N.E.2d 296 (1978); Milwaukee Mut. Ins. Co. v. City of Minneapolis, 307 Minn. 301, 239 N.W.2d 472 (1976); American Hardware Mut. Ins. Co. v. Tri-State Mut. Ins. Co., 276 N.W.2d 264 (S.D.1979); L. Frazier, The Business-Pursuits Exclusion Revisited, 649 Ins. L.J. 88 (Feb.1977). It could well be that an isolated charitable contribution that carried no business overtones and was delivered in a non-business fashion, not through the mail, but as an incident to the son's attendance at a dance would come within this exception.